LINCOLN COUNTY ET AL. *v.* BUTTERFIELD ET AL.

[72 South. 274.]

1. HIGHWAYS. *Highway districts. Annexation of territory. Statute. Bonds.*

Under Laws 1914, chapter 176, section 8, so providing, any portion of a district not coming under the act may be added to a district already established by a majority vote of the qualified electors, and where a good road district has been organized according to law, no other good road district can be organized to include and absorb the first district, but can only be added to it.

2. HIGHWAY DISTRICTS. *Annexation of territory. Bonds.*

Under Laws 1914, chapter 176, section 11, providing that good road districts separately taxed to pay interest on bonds shall not be subject to an additional tax for the payment of principal and interest on county bonds issued for road purposes without the consent of a majority of the qualified electors, where a good road district has once been organized under this chapter or the laws of which this chapter is an amendment, then no other good road district may ·be organized under this chapter to include and absorb the first named district and where additional territory is added, the enlarged territory would pay its *pro rata* share of the bonds originally issued by the organized district.

APPEAL from the chancery court of Lincoln county.
HON. C. B. TAYLOR, Chancellor

Bill for injunction by Charles S. Butterfield and others against Lincoln county and others. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Luther L. Tyler,* for appellants.

*P. Z. Jones* and *T. Brady, Jr.,* for appellees.

SYKES, J., delivered the opinion of the court.

Charles S. Butterfield and others filed a bill in the chancery court of Lincoln county against Lincoln county, the members of the board of supervisors of said county,

the sheriff and highway commissioners appointed by
said county under chapter 176 of the Laws of 1914 and
other interested parties, seeking to enjoin the county
from issuing and selling road bonds and otherwise put-
ting into operation certain orders passed by the board
of supervisors, in which it was attempted to organize
all of the five supervisor's districts of Lincoln county
into a separate road district under chapter 176 of the
laws of 1914. The grounds alleged in said petition
necessary to be mentioned by us in brief are: That the
board of supervisors was without power to include the
entire county in a separate road district under the
above act of the legislature, for the reason that several
years previous thereto, supervisor's district No. 1 in
said county had been organized into a separate good
roads district under chapter 149 of the Laws of 1910,
of which law chapter 176 is amendatory, and that as
a good roads district it had issued bonds to the amount
of two hundred thousand dollars, for the purpose of
building and maintaining good roads in that district,
which bonds had been duly sold and the good roads
built. That by the above issuance of bonds the
board of supervisors had exhausted its power over
supervisor's district No. 1 in so far as organizing it
into a separate road district was concerned, and that
the proper method for the board to have pursued under
chapter 176 was to have added to this good roads
district already formed additional territory as is con-
templated by section 8 of the above chapter. Certain
irregularities and failures to follow the provisions of
chapter 176, relating to the notice of the calling of the
election in supervisor's district No. 1, and failure to
print the proper notices on the official ballots are set
out, but it is not necessary for us to go into the de-
tails of these irregularities. A demurrer was inter-
posed to the bill, and a decree was rendered in favor
of the complainants, from which decree this appeal is
prosecuted.

It is the contention of the appellant that under section 11 of the above-mentioned chapter the board of supervisors on proper petitions had the right to include the good roads district already organized in supervisor's district No. 1 in another and larger good roads district, the second district, so to speak, swallowing up and completely absorbing the first good roads district. They contended that it was not necessary for the second or larger district to have assumed in any way the two hundred thousand dollars worth of bonds issued by the good roads district already organized. It is their contention that this authority is given them by the following quotation from said section 11:

"But the districts separately taxed to pay principal and interest on bonds for building roads made of stone, gravel, chert, slag, or sand clay, or of a combination of such material, or any material equally durable, shall not be subject to an additional tax for building such roads in other parts of the county or for the payment of principal and interest on any county bonds hereafter issued for road purposes, without the consent of a majority of the qualified electors of said district voting in an election held for that purpose."

The election was duly called in supervisor's district No. 1, and the majority of those voting in the election voted in favor of ths issuance of these new bonds.

It is not necessary for us to discuss generally the scheme of forming road districts and building roads under this chapter. This was done in the case of *Prather* v. *Googe, Sheriff*, 67 So. 156. A careful examination of this (chapter 176, Acts 1914) however, shows that where a separate good road district has already been organized under this chapter or under any previous laws of which this chapter is amendatory, and where other territory desires to be included in the same road district with that of the previously organized road district, then the procedure to be followed is set out in section 8 in this chapter. That is the only way

under this chapter for new territory to form a part of a road district with the previously organized road district. Section 11, and that part of it above quoted by us wherein it speaks of "the payment of principal and interest on any county bonds here after issued for road purposes," means bonds of the county issued by the county for road purposes as a county, and not as a good road district, under those sections of the Code of 1906, section 331 *et seq.,* and acts amendatory thereof, relating to the issuance of county bonds for road purposes, and does not mean any bonds issued under those acts of the legislature relating to the issuance of bonds by separate good roads districts. In conclusion it is the opinion of the court that where a good road district has once been organized under the above chapter or the laws of which this chapter is amendatory, then no other good road district may be organized under the above chapter to include and absorb the first-named district. That the only method of procedure by which the original district may be joined with additional territory is set forth in section 8 of this chapter. In that event the enlarged territory would pay its *pro rata* share of the bonds originally issued by the organized district. In the attempt made to swallow up supervisor's district No. 1 in the case now before us, this district would have had to pay off its original bonds without any aid from the other part of the new district, and in addition thereto it would have been compelled to pay its share of the bonds of the new district. This was not contemplated by the legislature. The case is therefore affirmed, and remanded to the lower court, and permission given to appellants to answer the bill within sixty days after the mandate of this court has been filed in the lower court.

*Affirmed and remanded.*